ACCEPTED
15-25-00022-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 4:20 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00022-CV

# In the Court of Appeals
## For the Fifteenth District of Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 4:20:08 PM
CHRISTOPHER A. PRINE
Clerk

**City of Coppell, Texas, et al.,**

*Appellants/Cross-Appellees,*

v.

**Kelly Hancock, in His Official Capacity as Acting Comptroller of Public Accounts of the State of Texas,**

*Appellee/Cross-Appellant.*

Appeal from the 201st Judicial District Court, Travis County, Texas
(Hon. Karin Crump, Presiding)

## Coppell Parties' Response Brief as Cross-Appellees

James B. Harris
State Bar No. 09065400
james.harris@hklaw.com

Stephen F. Fink
State Bar No. 07013500
stephen.fink@hklaw.com

Richard B. Phillips, Jr.
State Bar No. 24032833
rich.phillips@hklaw.com

Reed C. Randel
State Bar No. 24075780
reed.randel@hklaw.com

HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 964-9500

**Counsel for Coppell Parties**

**Oral Argument Requested**

# IDENTITY OF PARTIES AND COUNSEL

| Appellants/Cross-Appellees | Counsel |
|---|---|
| City of Coppell, Texas | James B. Harris |
| City of Humble, Texas | Stephen F. Fink |
| City of DeSoto, Texas | Richard B. Phillips, Jr. |
| City of Carrollton, Texas | Reed C. Randel |
| City of Farmers Branch, Texas | Brandon L. King |
| | Cole W. Browndorf |
| | HOLLAND & KNIGHT LLP |
| | 1722 Routh Street, Suite 1500 |
| | Dallas, Texas 75201 |

| Appellee/Cross-Appellant | Counsel |
|---|---|
| Glen Hegar, in His Official Capacity as Texas Comptroller of Public Accounts | Kyle Pierce Counce |
| | Deputy Division Chief |
| | Tax Litigation Division |
| | |
| | Deborah Rao[1] |
| | Matthew Kennedy[2] |
| | Amanda K. Romenesko[3] |
| | |
| | Office of the Attorney General of Texas |
| | P.O. Box 12548 |
| | Austin, Texas 78711 |
| | |
| | Ray Langenberg[4] |
| | Special Counsel for Tax Litigation |
| | Texas Comptroller of Public Accounts |
| | Office of the Attorney General |
| | Tax Division MC 029 |
| | P.O. Box 12548 |

---

[1] Ms. Rao is no longer counsel for the Comptroller.
[2] Mr. Kennedy is no longer counsel for the Comptroller.
[3] Ms. Romenesko is no longer counsel for the Comptroller.
[4] Mr. Langenberg is no longer counsel for the Comptroller.

| **Cross-Appellee** | **Counsel** |
| --- | --- |
| City of Round Rock, Texas | Cindy Olson Bourland<br>Bourland Law Firm, P.C.<br>P.O. Box 546<br>Round Rock, Texas 78680 |
| | Bryan J. Dotson<br>CHAMBERLAIN HRDLICKA<br>112 East Pecan Street, Ste. 1450<br>San Antonio, Texas 78205 |
| | Doug Sigel[5]<br>RYAN LAW FIRM, PLLC<br>Terrace 1, 2600 Via Fortuna Drive<br>Suite 150<br>Austin, Texas 78746 |

---

[5] Mr. Sigel has passed away and is no longer counsel for the City of Round Rock.

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . xi

Statement Regarding Record References . . . . . . . . . . . . . . . . . . . . xii

Issue Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    The Comptroller's interpretation of the statutory definition of place of business is not entitled to deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    The Comptroller did not argue deference in the district court—it has been waived or forfeited. . . . . . . . . . 2

        B.    The Comptroller has not argued or shown a prerequisite to deference: ambiguity. . . . . . . . . . . . . . 4

    2.    The Comptroller's interpretation of the statutory definition of place of business is not the "best meaning." . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.     Neither context nor the need to avoid absurdity establishes that the best meaning of the words in the statutory definition of place of business requires sales personnel. . . . . . . . . . . . . . . . . . . 7

B.     Neither context nor the need to avoid absurdity support the Comptroller's additions to the statutory language that cause locations using computers not to be places of business. . . . . . . . . . . . 10

3.     The Comptroller waived or forfeited the contention that the best meaning of the unambiguous statutory definition of place of business includes the conditions found in 3.334(c)(7). . . . . . . . . . . . . . . 12

A.     The challenged provisions are factually unsupported. . . . . . . . . . . . . . . . . . . . . . . . 14

B.     The challenged provisions are unreasonable because they illogically and irrationally treat substantively identical ways of ordering differently. . . . . . . . . . . . . . . . . . . . . . . . . 15

C.     The challenged provisions produce an illogical result. . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.     The adoption of the challenged provisions did not substantially comply with the APA's procedural requirements. . . . . . . . . . . . . . . . . . . . . . . . 18

A.     The Comptroller failed to provide a fiscal note describing a local government's estimated loss of or increase in revenue associated with the amendments to § 3.334. . . . . . . . . . . . . . . . . 18

B.     The Comptroller failed to provide a reasoned justification for § 3.334. . . . . . . . . . . . . . . . . 21

(1) The Comptroller failed in the June 2024 order to substantially comply with the requirement to provide a factual basis for the challenged provisions. . . . . . . . . . . . . . . . . . . . . . . . 21

(2) The Comptroller failed in the June 2024 order to substantially comply with the requirement to identify a legitimate objective for the challenged provisions. . . . . . . . . . . . . . . . . . 24

(3) The June 2024 order fails to address all the statutory factors the Comptroller was required to consider. . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . 29

Appendix

A — AG Opinion No. KP-0115
(Oct. 3, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . Tab A

# INDEX OF AUTHORITIES

Page

## CASES

*Affordable Motor Co. Inc. v. LNA, LLC*,
351 S.W.3d 515 (Tex. App.—Dallas 2011, pet. denied) . . . . . . . . . . . . . 3

*Brazoria Cnty. v. Tex. Comm'n on Env't Quality*,
128 S.W.3d 728 (Tex. App.—Austin 2004, no pet.). . . . . . . . . . . . . . 19

*Bullock v. Hewlett-Packard Co.*,
628 S.W.2d 754 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . 14

*Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*,
518 S.W.3d 318 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . 4

*Combs v. Health Care Servs. Corp.*,
401 S.W.3d 623 (Tex. 2013) . . . . . . . . . . . . . . . . . . . . 4

*Finley Res., Inc. v. Headington Royalty, Inc.*,
672 S.W.3d 332 (Tex. 2023) . . . . . . . . . . . . . . . . . . . . 9

*Gamble v. United States*,
139 S. Ct. 1960 (2019) (Thomas, J, concurring) . . . . . . . . . . . . . 5

*Hartman Income REIT Mgmt. v. Summer Energy, LLC*,
No. 14-22-00469-CV, 2023 WL 8263647 (Tex. App.—Houston
[14th Dist.] Nov. 30, 2023, no pet.) . . . . . . . . . . . . . . . . . 4

*In re B.L.D.*,
113 S.W.3d 340 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . 3

*In re J.A.M.R.*,
303 S.W.3d 422 (Tex. App.—Dallas 2010,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnson v. State Farm Mut. Auto. Ins. Co.*,
520 S.W.3d 92 (Tex. App.—Austin 2017,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Methodist Hosps. of Dallas v. Tex. Indus. Accident Bd.*,
798 S.W.2d 651 (Tex. App.—Austin 1990, writ
dism'd w.o.j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Molinet v. Kimbrell*,
356 S.W.3d 356 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Multicultural Media, Telecom & Internet Council v. FCC*,
873 F.3d 932 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . 13

*Nat'l Ass'n of Indep. Ins. v. Tex. Dept. of Ins.*,
925 S.W.2d 667 (Tex 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*,
406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.). . . . . . . . . . . . 27

*Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality*,
86 F.4th 653 (5th Cir. 2023), *opinion withdrawn and superseded
on other grounds*, 92 F.4th 1150 (5th Cir. 2024). . . . . . . . . . . . . . 26

*R.R. Comm'n of Tex. v. ARCO Oil & Gas Co.*,
876 S.W.2d 473 (Tex. App.—Austin 1994, writ denied) . . . . . . . . . . 21

*R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*,
336 S.W.3d 619 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sirius XM Radio, Inc. v. Hegar*,
643 S.W.3d 402 (Tex. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tex. Antiquities Comm'n v. Dallas Cnty. Community College Dist.*,
554 S.W.2d 924 (Tex. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*,
616 S.W.3d 558 (Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex.
Med. Ass'n*,
511 S.W.3d 28 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tex. Hosp. Ass'n v. Tex. Workers' Comp. Comm'n,*
911 S.W.2d 884 (Austin—1995, writ denied) . . . . . . . . . . . . . . . . 19, 22

*Tex. Workers' Comp. Comm'n v. Patient Advocs. of Texas,*
136 S.W.3d 643 (Tex. 2004) . . . . . . . . . . . . . . . . . . 14, 21

*Unigard Sec. Ins. Co. v. Schaefer,*
572 S.W.2d 303 (Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . 20

*Yancey v. Floyd West & Co.,*
755 S.W.2d 914 (Tex. App.—Fort Worth 1988, writ denied) . . . . . . . . . 3

## STATUTES

TEX. GOV'T CODE § 311.005(2) . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. GOV'T CODE §2001.035(d) . . . . . . . . . . . . . . . . . . . . . 20

TEX. GOV'T CODE § 2002.035(c). . . . . . . . . . . . . . . . . . . . . . 24

TEX. TAX CODE § 101.002 . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. TAX CODE § 111.002 . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEX. TAX CODE § 151.008(a). . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. TAX CODE § 151.107 . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. TAX CODE § 151.201 . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. TAX CODE § 151.202 . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. TAX CODE § 151.0242. . . . . . . . . . . . . . . . . . . . . . . . . 26

TEX. TAX CODE § 321.002(a)(3)(A) . . . . . . . . . . . . . . . . . . . . 12

TEX. TAX CODE § 321.203 . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. TAX CODE § 321.306 . . . . . . . . . . . . . . . . . . . . . . . 13, 14

TEX. TAX CODE § 323.203 . . . . . . . . . . . . . . . . . . . . . . . . . 12

**OTHER AUTHORITIES**

34 Tex. Admin. Code § 3.334 . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Comptroller's Decision*, Hearing No. 15,654, 1985 WL 16267 (Jan. 29, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Opinion No. KP-0115 (Oct. 3, 2016) . . . . . . . . . . . . . . . . . . . 5

Ron Beal, *Challenging the Factual Basis and Rationality of A Rule Under APTRA*, 45 Baylor L. Rev. 1, 2 (1993) . . . . . . . . . . . . . . 14

Webster's New Universal Unabridged Dictionary (1983) . . . . . . . . . . . . . 19

## STATEMENT OF THE CASE

*Nature of the Case*  Plaintiffs sued the Comptroller in his Official Capacity seeking a declaration that portions of 34 Tex. Admin. Code § 3.334 are invalid because they conflict with the statutes they purport to implement. (CR:6–31; 35–69; 155–84; 1346–1513; 1866–1926; 1989–2026; 2396–2436; 2437–2570.)

*Course of Proceedings*  The district court (the 250th Judicial District Court, Travis County, Hon. Karin Crump, presiding) conducted a bench trial. (6RR:8.)

*Trial Court's Disposition*  Following the bench trial, the district court entered judgment. (CR:2797.) Both the Comptroller and the Coppell Plaintiffs asked the district court to modify the judgment to clarify its meaning. (CR:2800–15; 2816–20.) The district court denied both motions. (CR:2840; 2841.) At the Coppell Plaintiffs' request, the district court entered conclusions of law, but those still did not resolve the confusion. (CR:2846.) The Coppell Parties appealed (CR:2854–58) and the Comptroller cross-appealed (CR:2859–64).

**STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal from a final judgment of the district court. TEX. GOV'T CODE § 22.220(a). This Court has exclusive jurisdiction over this appeal because it is a case against an officer of the State in his official capacity and it does not fall under any of the exceptions to this Court's jurisdiction. TEX. GOV'T CODE § 22.220(d)(1).

## STATEMENT REGARDING RECORD REFERENCES

The record on appeal comprises:

- The one-volume Clerk's Record filed in this Court on March 26, 2025, which will be cited as "CR:[page];"

- The twelve-volume Reporter's Record filed in this Court on June 27, 2025, which will be cited as "[volume]RR:[page];"

- The trial exhibits are in volumes 9 through 12 of the Reporter's Record, and they will be cited as follows:

    o Coppell Parties' Exhibits will be cited as "CPEx.[number] at [page];"

    o Round Rock Exhibits will be cited as "RREx.[number] at [page];"

    o The Comptroller's Exhibits will be cited as "DEx.[number] at [page.]"

## ISSUE STATEMENT

The Comptroller cannot adopt rules that (1) contravene specific statutory language; (2) run counter to the general objectives of the statutory provisions it is implementing; or (3) impose additional burdens, conditions, or restrictions in excess of or inconsistent with the statutory provision. Under those tests, do the following subsections of 34 TAC § 3.334: (a)(9), (a)(18), (b)(1)(A), (b)(5), or (c)(7), individually and in combination, invalidly rewrite the statutory definition of "place of business of the retailer" in Tax Code § 321.002(a)(3)(A)?

## SUMMARY OF THE ARGUMENT

The Comptroller and the Coppell Plaintiffs disagree about the meaning of the words "receives" and "order." The Coppell Plaintiffs say those words have their plain meaning. "Receives" means "get" and "order" means a "request to purchase," with no conditions attached. Provisions of Comptroller's rule § 3.334 that the Coppell Plaintiffs challenge add limiting conditions at odds with that plain meaning.

In his opening brief the Comptroller does not advance his theory below that in context "receives" and "order" allow the conditions. Instead, he argues that the Court must defer to his policy-based understanding because of his purportedly broad rule-making authority. But he didn't make that argument below. He is wrong anyway about the breadth of his rule-making authority and his policy arguments are unavailing. In any event, courts do not defer to agencies on statutory interpretation without having first exhausted a search for the statute's "best" meaning, a search that only rarely fails. Here the "best" meaning of the disputed words is their plain unconditioned meaning.

Moreover, the Comptroller's added conditions result in rules that are substantively unreasonable.

Finally, and alternatively to the Coppell Plaintiffs' substantive argument, the Comptroller's rule-making process failed in a number of respects to comply with the Administrative Procedure Act. He failed in the notice proposing the rule to provide

the required estimate of the rule's effect on the revenue of local governments. He failed to provide a factual basis for the rule, relying instead on unsubstantiated conclusions. He failed to provide a legitimate objective for the rule. He failed to consider that the rule would reject a legislative preference for allocating local sales tax to the community from which goods are delivered to purchasers. He failed to satisfactorily explain this change in his longstanding contrary position. And he failed to provide a reasoned justification for the rule.

Substantively and procedurally the provisions of 34 Tex. Admin. Code § 3.334 are invalid.

## ARGUMENT AND AUTHORITIES

**1.    The Comptroller's interpretation of the statutory definition of place of business is not entitled to deference.**

**A.    The Comptroller did not argue deference in the district court—it has been waived or forfeited.**

Despite using "deference" only twice, the Comptroller starts his opening brief, tellingly, with a full-throated contention that unless the statutory text by its express terms forbids a rule he adopts, the Legislature's "broad grant of rulemaking authority" requires this Court to bend the knee. That remarkable argument, bolstered with cherrypicked snippets from caselaw, misstates courts' and administrative agencies' roles in statutory interpretation. It also markedly contradicts the judiciary's role in interpreting statutes as described in an amicus brief to the United States Supreme

Court joined by the Attorney General in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).[6]

The misstatement is inconsequential here because the Comptroller waived reliance on deference by not raising it below. Nor did the Comptroller argue below a prerequisite to deference—that the disputed language is ambiguous. *Johnson v. State Farm Mut. Auto. Ins. Co.,* 520 S.W.3d 92, 105 (Tex. App.—Austin 2017, pet. denied) (court may not consider ambiguity if not raised in the trial court); *Affordable Motor Co. Inc. v. LNA, LLC,* 351 S.W.3d 515, 522 (Tex. App.—Dallas 2011, pet. denied) (same); *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 917 (Tex. App.—Fort Worth 1988, writ denied) (same). Although this Court's review is *de novo*, it is still review, not first view. The principles of orderliness, fairness, and efficient judicial administration that underlie error-preservation rules apply. *In re B.L.D.,* 113 S.W.3d 340, 350 (Tex. 2003).

What the Comptroller did argue for below was a particular understanding of the words used in the statutory definition of "place of business" based on context and avoiding absurdity. That is not an argument for ambiguity or for deference. It is

---

[6] Among other things the brief observed that reversing *Chevron* would require lower courts "to put greater effort into the textual investigation at step one before they rush on to the (easier) task of deciding whether to defer to the agency at step two." (Brief of West Virginia and 17 Other States as Amicus Curiae at 19, *Loper Bright Enters., Inc. v. Raimondo*, No. 22-451 (2022) (internal citation omitted).) As discussed below, Texas law already imposes that duty.

the opposite. It is an argument that in context the words used to define place of business have a "best meaning" *other than* their plain, ordinary meaning. *Cf. Loper Bright*, 144 S. Ct. at 2266 ("in the business of statutory interpretation, if it is not the best, it is not permissible"). That is the ground on which the parties contended below and the question this Court may review *de novo*.

> **B.    The Comptroller has not argued or shown a prerequisite to deference: ambiguity.**

Deference can come into play only when a statute is ambiguous. *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (ambiguity is a precondition to agency deference). But what is ambiguous for that purpose can be somewhat misleading: it does not mean "room for disagreement" or "broad." The Texas Supreme Court holds that statutory interpretation starts, and often ends, with the plain meaning of words unless context or avoiding absurdity compels a different meaning. *Molinet v. Kimbrell,* 356 S.W.3d 356, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent."); *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,* 518 S.W.3d 318, 325 (Tex. 2016) (a court looks to and relies on the plain meaning unless a different meaning is apparent from context or the plain meaning leads to absurd results).

If neither plain meaning nor context provides the best meaning, and a word or phrase objectively has more than one reasonable meaning, ambiguity exists. *Hartman Income REIT Mgmt. v. Summer Energy, LLC*, No. 14-22-00469-CV, 2023

WL 8263647, at *4–5 (Tex. App.—Houston [14th Dist.] Nov. 30, 2023, no pet.). Even then, the agency's interpretation is only given "serious consideration" *if* it is reasonable.[7] *R.R. Comm'n v. Texas Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 624 (Tex. 2011). But as the Attorney General has recognized, proper textual analysis rarely yields ambiguity. AG Opinion No. KP-0115 at 8 (Oct. 3, 2016) (App. Tab A) ("One might rightfully question why the Texas Supreme Court so rarely defers to agencies. Practically speaking, the Court has made clear that this is because of its view of statutes…so rarely being ambiguous.").

The Comptroller thus understandably mentions ambiguity in his opening brief almost in passing, without expressly contending that the crucial words "receives" or "orders" are ambiguous. (Comptroller's Br. at 11–12 ("Where there is vagueness, ambiguity, *or* room for policy determinations in a statute, as there is here, courts defer to the agency's interpretation.") (emphasis added).) The omission is surely not an oversight. "Receiving" and "orders" in the sales-tax context simply do not have two (or more) dictionary meanings, or two (or more) objectively reasonable meanings, as is required for real ambiguity. *See Gamble v. United States*, 139 S. Ct.

---

[7] As the Texas Supreme Court has recognized, this test fundamentally differs from the federal rule of deference before *Loper Bright. Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022). It in fact presaged *Loper Bright* in calling for a court to search out the best meaning for statutory terms.

1960, 1987 (2019) (Thomas, J, concurring) ("The law may be, on rare occasion, truly ambiguous—meaning susceptible to multiple, equally correct legal meanings.").

The Comptroller seems to assert that the Court can overlook the absence of ambiguity because of "room for policy determinations in the statute." His brief focuses solely on his claimed broad rulemaking authority, asserting it allows him to modify the statute. That position is simply wrong. The Comptroller can have the broadest possible authority to issue rules and a statute can have a capacious reach, but if the Comptroller chooses to use his authority to promulgate rules that contravene unambiguous statutory text by imposing conditions not found in that text or that run counter to the general objectives of the statute, the rule is invalid. *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). Statutory text with a plain meaning forecloses "room" for "policy determinations."[8]

---

[8] The Legislature can, and occasionally does, *expressly* authorize an agency to set policy or "fill gaps" deliberately left by the Legislature. But even in those rare situations, the Legislature must create meaningful guardrails for the exercise of agency discretion, as the Coppell Plaintiffs note later. The standard authorization to promulgate reasonable rules typically extended by the Legislature to every administrative agency is not an authorization for the agency to make "policy determinations."

**2.** **The Comptroller's interpretation of the statutory definition of place of business is not the "best meaning."**

The Coppell Plaintiffs and the Comptroller disagree about the meaning of "receives" and "order." [9] The Coppell Plaintiffs argue that the conditions or limitations the Comptroller reads into those words conflict with their plain meaning. (Coppell Br. at 34–37.) To prevail in the absence of ambiguity, the Comptroller must establish that his interpretation, supposedly contextually derived, is the "best meaning." He does not and cannot. The provisions in § 3.334 the Coppell Plaintiffs challenge are therefore invalid.

**A.** **Neither context nor the need to avoid absurdity establishes that the best meaning of the words in the statutory definition of place of business requires sales personnel.**

Section 3.334(a)(18) imposes a condition not found in the statutory definition of place of business—"sales personnel." The Comptroller explains the addition this way: "because a sales tax permit is required if a location has sales personnel." If intended as an argument from context, it is misleading in the extreme. A sales-tax permit is required for each place of business and must be obtained by the applying "seller." TEX. TAX CODE §§ 151.201–202; 321.303. "Seller" is in turn defined as a "person," *id*. § 151.008(a), which includes a "corporation, organization, government

---

[9] Having cited dictionary definitions in their opening brief (Coppell Br. at 19), here the Coppell Plaintiffs will sometimes for illustrative purposes substitute "get" for "receive" and "request" for "order" in connection with purchasing taxable items.

or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity" that makes sales. TEX. GOV'T CODE § 311.005(2).[10] In short, a sales-tax permit is required *regardless* of the presence of sales personnel, not *because* of the presence of sales personnel.[11] Sales personnel at a location is no doubt evidence that sales may occur there, and thus of the need for a sales-tax permit. But the sales-tax provision shows that sales may also occur where no natural "person" is present. So, the need for a sales-tax permit supplies no context for compelling the addition of ales personnel to the statutory definition of place of business.

The Comptroller also asserts, without justification or explanation, that a place of business needs sales personnel because the requirement "provides an objective criterion for buyers, sellers, and auditors to consider." (Comptroller's Br. at 45.) That argument implies that the plain meaning of "receives" and "orders"—the words the Legislature chose—lack objective content in the sales-tax context, *i.e.*, that they are

---

[10] Definitions in the Government Code apply to Tax Code Chapter 321. TEX. TAX CODE § 101.002.

[11] The Comptroller offers a "*See*" cite to Tax Code section 151.107. That provision defines when a retailer is engaged in business in Texas, not when a sales-tax permit is needed. There are nine other ways a retailer can do business in Texas including "otherwise does business in this state." TEX. TAX CODE § 151.107. Only one of the nine ways involves sales personnel. Among the other ways a retailer can be engaged in business in Texas is having a "physical location where business is conducted." *Id.* Section 151.107 provides no support for adding sales personnel to the statutory definition of place of business.

somehow overbroad. But there is no inconsistency between breadth and clarity. *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 340 (Tex. 2023).

The statutory words defining a place of business already provide objective criteria. A place of business must be an established outlet, office, or location: (i) operated by (a) a retailer or (b) the retailer's agent or employee, either (ii) for the purpose of receiving orders, or (iii) at which the retailer receives three or more orders in a calendar year. The Comptroller's implicit suggestion that those conditions are *not* "objective" but having sales personnel *is* objective makes no sense. "Agent" and "employee" have settled legal definitions; "sales personnel" does not.

Finally, the Comptroller asserts that requiring sales personnel is necessary to ensure that a "computer server, Internet protocol address, domain name, website, or software application" by themselves, cannot be places of business. (Comptroller's Br. at 16.) Again, the Comptroller provides neither convincing context nor any plausible avoiding-absurdity claim to support his argument. The definition already prevents computer systems, standing alone, from constituting a place of business: in ordinary usage as well as in the sales context a "computer server, Internet protocol address, domain name, website, or software application" is equipment or personal property, not an "outlet, office, or location." A requirement of sales personnel at a place of business is not necessary to understand that computer systems themselves are not within the definition.

The Comptroller argues "administrative expediency, clarity, and consistency for the agency, taxpayers, and the public regarding the application of the consummation statutes" in support of the sales personnel requirement. (Comptroller's Br. at 17.) Those are all fine things, but they are not legally recognized justifications for the Comptroller to add requirements for a place of business that the Legislature did not think necessary.

**B.** **Neither context nor the need to avoid absurdity support the Comptroller's additions to the statutory language that cause locations using computers not to be places of business.**

In § 3.334(b)(5), the Comptroller decreed that neither computers using automated shopping cart software nor computers controlling automated telephone ordering systems are places of business. The Coppell Plaintiffs challenged the rule to the extent it excludes as a place of business an established location of a retailer where taxable items are shipped, delivered, or picked up that *has and uses* computers exclusively to get requests for taxable items.

The Comptroller starts his statutory defense of this aspect of the rule by repeating that such locations cannot be a place of business because they do not have sales personnel. (Comptroller's Br. at 18.) But the Coppell Plaintiffs have already demonstrated that the proposed requirement for sales personnel is a policy-based limitation or condition on—thus a contradiction of—the plain meaning of the statutory words that define place of business.

The Comptroller next asserts that locations using computers not being places of business is consistent with prior Comptroller rules and interpretations. (*Id*. at 19.) But there are no prior Comptroller rules or interpretations of general applicability that explicitly tie the existence of a place of business to the presence of sales personnel or rule out locations that get requests made and transmitted through a computer. As the Coppell Plaintiffs showed in their opening brief, the Comptroller's prior rules and interpretations of general applicability treated the statutory definition of place of business as including locations without sales personnel and that use computers to get requests. (Coppell Br. at 34.)

Rather than arguing text or even context, the Comptroller once again invokes his rulemaking authority and an agency's ability to "clarify" the Legislature's product and provide "specific detail." (Comptroller's Br. at 19.) And once more, the Comptroller confuses statutory breadth with a legislative invitation to make policy. With respect to § 3.334(b)(5) the mask comes off entirely: it is "the Comptroller's recognition of *the realities of online orders* and *their effect on local tax collection,*" *id*. (emphasis added), that he claims allows him rather than the Legislature to change the allocation rules for local sales tax established by plain statutory text.

**3.** **The Comptroller waived or forfeited the contention that the best meaning of the unambiguous statutory definition of place of business includes the conditions found in 3.334(c)(7).**

Subsection 3.334(c)(7) provides that an order is received only where it is initially received. That initial receipt occurs when the seller has received all the information from the purchaser necessary to determine whether the order can be accepted. The location from which a product is shipped is not used in determining the location where the seller receives the order. The best interpretation of the statutory definition of place of business does not include those conditions. None is found in the statutory definition, putting (c)(7) in conflict with the plain meaning of the words "receives" and "orders." The district court agreed. The judge found § 3.334(c) contravenes specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203 and enjoined enforcement of § 3.334(c).

The Comptroller does not challenge the judge's finding directly, claiming instead that because (c)(7) was not specifically mentioned in the final judgment, it was not invalidated. That argument is mistaken. Invalidating an entire section and prohibiting its enforcement necessarily includes all the subsections of the section that were challenged. That the district court did not explicitly address another section of

§ 3.334 that treats "forwarded" orders as not received does not change the fact that the judge found all the challenged provisions of § 3.334(c) invalid.[12]

The Comptroller has not said why statutory context demands that an "order" may only be "received" once. He asks only that if the district court found (c)(7) invalid and enjoined its enforcement, the finding be reversed. (Comptroller's Br. at 24.) That inadequate briefing waives the argument. *In re J.A.M.R.*, 303 S.W.3d 422, 425–26 (Tex. App.—Dallas 2010, no pet.) ("Bare assertions of error without argument or authority waive error."). The Comptroller fails to address the statutory requirement that a rule be substantively reasonable.

The Legislature has provided a substantive test for any rule adopted by the Comptroller under chapter 321—it must be reasonable. Tex. Tax Code § 321.306. The requirement applies to the rule itself, not to the Comptroller's interpretation of the statute the rule purports to implement. *Id.* In other words, even if the rule does not contravene the statutory language, add conditions absent from the statute, or result from a failure to follow required procedures for adoption, it may still be unreasonable. *Cf. Multicultural Media, Telecom & Internet Council v. FCC,* 873 F.3d 932, 936–37 (D.C. Cir. 2017) ("In arbitrary and capricious cases [under the federal

---

[12] There is no inconsistency. That a request for a taxable item can be received at multiple locations does not mean it must have been "forwarded" from one to another. Regardless, to the extent an inconsistency exists based on something the district court did not address, it cannot undo an issue the district court addressed explicitly.

APA] we distinguish substantive unreasonable claims from lack-of-reasoned-explanation claims." "In short, an agency's exercise of discretion must be both reasonable and reasonably explained.").[13]

In determining substantive reasonableness under Tex. Tax Code § 321.306 the Court should approach understanding the word "reasonable" as it would any other question of statutory interpretation. It should ask what the common, ordinary meaning of the word is. The Coppell Plaintiffs suggest that for a rule to be substantively reasonable, as that word is commonly understood, it must be factually founded, logical, or rational.[14]

## A.     The challenged provisions are factually unsupported.

An administrative rule must rest on a sound factual predicate. A rule based on an incorrect factual predicate is unreasonable. *See Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 757 (Tex. 1982) ("A rule is arbitrary and capricious when it lacks a legitimate reason to support it."); *see also* Ron Beal, *Challenging the Factual Basis and Rationality of A Rule Under APTRA*, 45 Baylor L. Rev. 1, 2 (1993).

---

[13] Texas courts often look to federal decisions on administrative-law points where the statutory commands are functionally similar. *Texas Workers' Comp. Comm'n v. Patient Advocs. of Texas*, 136 S.W.3d 643, 650 (Tex. 2004). The dichotomy identified in the federal Administrative Procedure Act is also found in the relationship of the Tax Code's requirement that rules be reasonable and the command of the Texas Administrative Procedure Act ("APA") that agencies provide a reasoned justification for a rule.
[14] Each of the words is a synonym for reasonable. Roget's International Thesaurus at 364 (482.20) (4th ed. 1977).

Subsections (a)(18), (b)(5) and (c)(7), when read together, show that the Comptroller does not consider a request placed on a website and transmitted over the Internet as a single request but as a series of requests received separately one at a time by a series of computers with one computer being first. That explains his statements about such orders being "forwarded." Comments from the Coppell Plaintiffs established the contrary. CPEx.32. So did the evidence at trial. 7RR:197–99. The Comptroller has never contested the Coppell Plaintiffs' position or provided facts to support his conception that requests placed on websites to purchase items are "forwarded." The Comptroller's unsubstantiated assumptions about an "automated order receipt system"—the term used in (c)(7) to describe requests placed on a website and transmitted over the Internet—thus lack a factual predicate, rendering § 3.334(c)(7) unreasonable.

**B.    The challenged provisions are unreasonable because they illogically and irrationally treat substantively identical ways of ordering differently.**

Requests to purchase taxable items can be made face-to-face, over the telephone, through the post, using a fax, using an email, and using a website, among other possibilities. All the listed forms of ordering require human involvement, directly or indirectly, for the order to be reviewed and approved and for the item ordered to be shipped, delivered, or picked up. Yet under § 3.334, just one type of request is considered not received at the location from which the item ordered is

shipped or delivered to the buyer or where it is picked up by the buyer—a request made through a website.

No factual basis is conceivable for treating website orders differently, and the Comptroller has advanced none. A request placed on a website contains the same information as the other methods. The same goods can be purchased through all methods and four of the five methods (telephone, mail, fax, email) rely on shipping or delivery of the goods in the same manner as website orders. So, neither the type of goods nor how the purchaser gets possession of them logically explains the different treatment. And except in the unusual case where the request is personally fulfilled by the same individual that initially gets the request, four of the five methods simply communicate information that is then input into a computer for fulfillment, indistinguishably from the way it would happen if the purchaser used a website. An immaterial difference in how a request is fulfilled provides no logical reason to explain different treatment in where "consummation" is deemed to occur.

Finally, there is no functional difference between (1) a person walking into a brick-and-mortar store, reviewing available merchandise, selecting an item to buy, purchasing that item using a credit card, and asking the item be delivered to their home and (2) a person visiting a website, reviewing available merchandise, selecting an item to buy, purchasing that item using a credit card, and directing that it be delivered to their home. The fact that one buyer is present in person and the other is

virtually present where the item is located is a distinction without a difference. It is illogical and irrational—it is not reasonable—to treat requests placed on a website differently from other methods of ordering, yet that is what the provisions of § 3.334 challenged by the Coppell Plaintiffs do.

### C. The challenged provisions produce an illogical result.

Under the challenged provisions, if a purchaser places an order at home through a website and the good is shipped from a location that only gets orders placed on websites, that order is not received at the location that got the order. On the other hand, the Comptroller has said that if that same purchaser walks into the location that shipped what he ordered, and he had ordered the same good through the same website but on a computer at that location, the order would have been received there. 12RR:170–72.

The Comptroller offers no reason why the Legislature would make the presence of the purchaser on-site change where the sale was consummated—the practical as opposed to the formal completion of the sales transaction—occurs. It is irrational for "completion" to be determined by the location from which the request is made instead of the location where it is received. The Legislature could not have intended that illogical result.

**4. The adoption of the challenged provisions did not substantially comply with the APA's procedural requirements.**

**A. The Comptroller failed to provide a fiscal note describing a local government's estimated loss of or increase in revenue associated with the amendments to § 3.334.**

The Coppell Plaintiffs and the Comptroller (Comptroller's Br. at 24) agree that the notice of a proposed rule must ensure that the *public* understands how their interests may be affected in order to allow the *public* a meaningful opportunity for participation by submitting specific concrete challenges to a rule. *Methodist Hosps. of Dallas v. Tex. Indus. Accident Bd.,* 798 S.W.2d 651, 654–56 (Tex. App.—Austin 1990, writ dism'd w.o.j).

As an initial matter, the Comptroller admits that even under his theory, substantial compliance with the notice requirement would not have been achieved until the April 2024 notice of proposed changes to § 3.334, issued more than four years after the initial notice and after three failed efforts to provide the required estimate of fiscal impact. (Comptroller's Br. at 27.) The district court found in August 2022 that the initial notice was insufficient and reached the same conclusion with respect to the April 2024 notice in the December 2024 final judgment. (CR:1336–37; 2797–99.)

The district court was correct. As the cases cited by the Comptroller hold, substantial compliance requires that the Comptroller first show that the notice achieved the legislative objective for requiring an estimate of the effect of a rule on

local governments' revenue. (Comptroller's Br. at 24.) Several objectives are readily apparent from the face of the requirement. One is to allow the Comptroller to take into account how a rule will affect revenue before proposing a rule. A second is to ensure that local governments are warned how a rule might affect them, so their concerns can be communicated and meaningfully heard. A third is to allow those affected to prepare for the rule's implementation.

To establish substantial compliance, the Comptroller must show that in the notice he consciously, *Methodist Hospitals of Dallas*, 798 S.W.2d at 655, and also concisely, specifically, and unambiguously *estimated* the rule's effect on the revenue of local governments. *Texas Hosp. Ass'n v. Tex. Workers' Comp. Comm'n*, 911 S.W.2d 884, 887 (Austin—1995, writ denied). The Comptroller never did so here.

To begin with, the Comptroller did not provide an *estimate*— "a rough calculation of size, value, etc." Webster's New Universal Unabridged Dictionary at 625 (1983). A proper estimate must be expressed as a dollar amount, unless there is no financial effect. *Brazoria Cnty. v. Tex. Comm'n on Envtl. Quality,* 128 S.W.3d 728, 742–43 (Tex. App.—Austin 2004, no pet.). The absence of an estimate or even a method of making an estimate means the Comptroller did not consciously consider whether the effects on local revenue were such that the rule should not be proposed or proposed in a manner that lessened any impact. His failure to provide a concise, specific and unambiguous estimate also denied local governments the opportunity

to challenge the rule through meaningful participation in the rulemaking. All they knew from the Comptroller's notice was that things could change, but that is true of any rule amendment. What they needed was some way to estimate how they could be affected—a way of calculating an approximate gain or loss of revenue. Finally, without a glimmering of its fiscal impact, local governments had no way of preparing for the rule's implementation.

The Comptroller's defense is that there was no way to provide an estimate. (Comptroller's Br. at 27–29.) But given the statistical and evaluative capabilities of the Comptroller's office there was: the Coppell Plaintiffs explained how in comments filed in response to the April 2024 notice of proposed changes to § 3.334. CPEx.39:8–14. The Comptroller dismissed that suggestion with unsupported conclusory statements that it was not required by the APA. CPEx.40:11–12. And contrary to the Comptroller's assertion, the Coppell Plaintiffs did bring this issue to the district court's attention. CR:2699–2700.

That the Coppell Plaintiffs participated in the rulemaking does not let the Comptroller off the hook. The need to show prejudice in connection with procedural shortcomings in adopting a rule is limited to technical defects. TEX. GOV'T CODE §2001.035(d). It follows that non-technical defects do not require the challenging party to prove harm. *Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d 303, 307 (Tex. 1978) (when specific exclusions or exceptions are stated by the Legislature, the

intent is usually clear that no other shall apply).The Comptroller does not argue that his failure to provide the required estimate was a technical defect nor could he reasonably do so. His failure to provide the required estimate harmed local governments that will receive an unwanted surprise (loss of revenue) if the challenged provisions of § 3.334 are enforced.

**B.     The Comptroller failed to provide a reasoned justification for § 3.334.**

**(1)     *The Comptroller failed in the June 2024 order to substantially comply with the requirement to provide a factual basis for the challenged provisions.***

Although the Comptroller uses many pages and hundreds of words to describe when an agency has satisfied the "reasoned justification" test, he finally gets it right when he says, succinctly, in accordance with *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648–49 (Tex. 2004) and *R.R. Comm'n of Tex. v. ARCO Oil & Gas Co.,* 876 S.W.2d 473, 494 (Tex. App.—Austin 1994, writ denied), that "the Comptroller's order adopting the Rule should explain how and why the Comptroller reached its conclusion." (Comptroller's Br. at 38.)[15] But he did not do

---

[15] The Comptroller suggests that in determining whether there is a reasoned justification the Court is limited to the order adopting the rule. (Comptroller's Br. at 35.) The Court may consider filed comments, *R.R. Comm'n of Tex. v. ARCO Oil & Gas Co., a Div. of Atl. Richfield Co.* 876 S.W.2d 473, 480 & n.6 (Tex. App.—Austin 1994, writ denied), and the background evidence submitted at trial. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 568 (Tex. 2021).

that. The June order abounds in chaff but contains virtually no wheat concerning the factual basis for the provisions being challenged.

Requiring facts prevents an agency from adopting what courts have termed "conclusory" ("because we say so") rules. *Nat'l Ass'n of Indep. Ins. v. Tex. Dept. of Ins.*, 925 S.W.2d 667, 670 (Tex 1996). Such rules usually result from an agency failing to critically consider and evaluate the reasons for a rule before proposing it. *Id.*; *Tex. Workers' Comp. Comm'n,* 136 S.W.3d at 648–49. And the absence of factual support can result in judicial review being largely a rubber stamp of the agency's action. *Id.*

The Comptroller argues that the challenged provisions are not "conclusory" by implying that the June 2024 order contains five full pages of "factual summary" justifying the challenged provisions. In fact, the five pages are almost entirely devoted to responding to comments, CPEx.40: 2, 3, 5, 9, and 10.

For § 3.334(a)(18), the regulatory definition of place of business, the factual summary focuses exclusively on the added requirement of sales personnel. *Id.* at 2–3. The Comptroller's "facts" consist of "providing an objective criterion for buyers, sellers, and auditors to consider," to "facilitate uniformity and ease of administration for taxpayers and auditors." *Id.* Nothing more. But those are not facts justifying the need for sales personnel. They are objectives. There are no facts to show a need to achieve those objectives. The statutory definition of place of business had been in

place for 46 years and regulations implementing that definition for just as long. What facts existed in 2020 to suggest that those definitions no longer provided "objective criterion" and hindered "uniformity and ease of administration"? Nothing in the June 2024 order provides an answer.

The Comptroller also fails to explain *how* the addition of sales personnel creates an "objective criterion." No definition of "sales personnel" is provided. The Comptroller conceded no specific criteria for determining who is a salesperson exist; he apparently intends to make that identification on a case-by-case basis, which is the opposite of an objective criterion. 12RR:309–12.

Section 3.334(a)(18) also provides that a place of business "usually requires staffing by one or more sales personnel," without facts explaining what "usually" means. *Id*. By attaching a vague, subjective condition to a statute that had been well understood for 46 years, § 3.334(a)(18) creates confusion rather than reducing it.

For § 3.334(b)(5) the factual summary consists of "the factual bases for subsection (b)(5) are the same as for the definition [(a)(18)]." *Id.* at 3. Because the factual basis for (a)(18) is insufficient, so is the factual basis for (b)(5).

For § 3.334(c)(7), the factual summary is limited to "it has become apparent that other circumstances also require a clear articulation of the comptroller's interpretation of the term 'received.'" *Id.* at 5. Missing is an explanation of what the

"other circumstances" are. A summary can be a condensed version of the facts, but "other circumstances" is not a condensed version. It is an evasion.

If what the Comptroller has provided is sufficient, any agency is free to justify a rule with conclusions—essentially, no more than "we see a problem"— rather than with facts and analysis. Allowing the Comptroller to justify rules in that fashion prevents those affected from mounting an effective factual challenge. Meaningful judicial review is therefore also precluded, effectively writing the need for a factual summary and a reasoned justification out of the APA. That cannot be what the Legislature intended.

> **(2)    The Comptroller failed in the June 2024 order to substantially comply with the requirement to identify a legitimate objective for the challenged provisions.**

In addition to requiring that the Comptroller explain the rational connection between the factual basis for a rule and the rule, the APA also mandates that he show in a clear and logical fashion that "a rule is a reasonable means to a legitimate objective." Tex. Gov't Code § 2002.035(c). For the reasons already identified, the Comptroller failed to identify in the June 2024 order any legitimate objective or objectives that he seeks to achieve or to describe how the challenged provisions achieve any legitimate objective of objectives. He asks the Court: "trust me." That is not enough.

### (3) The June 2024 order fails to address all the statutory factors the Comptroller was required to consider.

The Comptroller agrees that in a rulemaking he is required to consider relevant factors and explain why he reached a reasonable result. (Comptroller's Br. at 44, 45 n.6.) But he then argues that, given the rulemaking authority granted in Tax Code § 111.002, the only factor he is required to consider is whether a rule conflicts with the laws and constitution of Texas or the federal constitution. *Id*. Not so.

As an initial matter, if the Comptroller's was correct, the delegation of authority would itself be unconstitutional, because it imposes no constraint beyond what applies to any governmental action. It abdicates the Legislature's full lawmaking authority to the Comptroller in violation of the constitutionally mandated separation of the legislative and executive powers.

The Supreme Court has found such unlimited delegations unconstitutional. In *Tex. Antiquities Comm'n v. Dallas Cnty. Community College Dist*., 554 S.W.2d 924, 927–29 (Tex. 1977), the court concluded that giving the Antiquities Committee the authority over "all … buildings … and locations of historical … interest" impermissibly delegated basic policy-making to an administrative agency because criteria or safeguards necessary to protect those affected from *ad hoc* and subjective actions were lacking. The same problem exists under the Comptroller's view of his rulemaking authority.

In any event, the Comptroller's view is wrong. The Comptroller overlooks the most relevant factor he should have considered, which is derived from the purpose of Subchapter C of Chapter 321: to determine, if a local sales tax is imposed, which municipality receives it. In subchapter C the Legislature directed the Comptroller to implement origin-sourcing, unless explicitly told otherwise.[16] And the few exceptions it identified in subchapter C are inconsistent with the provisions of § 3.334 the Coppell Plaintiffs are challenging. The Comptroller never identified origin-sourcing as the primary approach to allocating local sales tax, so naturally he did not meaningfully address it before adopting the changes to § 3.334 being challenged. That failure means the reasonable-justification standard has not been met.

Subsumed in the requirement that the Comptroller reach a reasonable result is the need to discuss and justify more fully than is otherwise required, a proposed *change* to a regulatory policy that has been reasonably relied on, especially for a significant period. *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't*

---

[16] In 1980 the House of Representatives issued an interim report that considered whether to continue the changes made in 1979 that included imposing a definition of place of business. One of the options considered was to rewrite the statute to use destination-sourcing. The resulting recommendation, which was followed, was to maintain origin sourcing and reject destination sourcing. DEx.25 at 15, 16, 22–24, 27. The Comptroller agrees that the Legislature rejected destination sourcing. *Comptroller's Decision*, Hearing No. 15,654, 1985 WL 16267, at *2 (Jan. 29, 1985) ("It also seems fairly clear that the Legislature did not want 'destination' sales, but some 'origination' of sales approach."). Since 1981, chapter 321 has maintained origin-sourcing, with the few legislative exceptions adopted in 1979. In 2019 the Legislature did impose destination sourcing in chapter 151 for "marketplace" providers, such as Amazon, eBay, Etsy, and Walmart Marketplace. Tex. Tax Code § 151.0242. The rules for marketplace providers are not being challenged here.

*Quality*, 86 F.4th 653, 655 (5th Cir. 2023), *opinion withdrawn and superseded on other grounds*, 92 F.4th 1150 (5th Cir. 2024)("When a Texas state agency departs from its own administrative policy … Texas law requires it to adequately explain its reasons for doing so."); *Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 406 S.W.3d 253, 268 (Tex. App.—Austin 2013, no pet.)(finding the TCEQ had failed to provide any "statutory, rule-based, or precedential support or analysis" to explain its departure from prior policy). The rules implementing the statutory definition of place of business existed from 1979 until 2020 without the conditions added to the challenged provisions of § 3.334 and without any evidence of confusion requiring "clarification." The added conditions being challenged indisputably represent a sea-change in the Comptroller's sourcing administration. (Coppell Br. at 3–6, 11–13, 34.) Sales of taxable items that had been origin-sourced are now destination-sourced. *Id.* Nothing in the June 2024 order, or for that matter any of the earlier orders adopting the challenged provisions, justifies the Comptroller's change in position.

## CONCLUSION

Subsections (a)(9), (a)(18), (b)(1)(A), (b)(5) and (c)(7) of § 3.334 violate the statute they purport to implement. This Court should therefore render judgment that the identified portions of § 3.334 are invalid.

Dated: November 26, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Richard B. Phillips, Jr.*
    James B. Harris
    State Bar No. 09065400
    james.harris@hklaw.com

    Stephen F. Fink
    State Bar No. 07013500
    stephen.fink@hklaw.com

    Richard B. Phillips, Jr.
    State Bar No. 24032833
    rich.phillips@hklaw.com

    Reed C. Randel
    State Bar No. 24075780
    reed.randel@hklaw.com

    Cole W. Browndorf
    State Bar No. 24127229
    cole.browndorf@hklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 964-9500
Fax: (214) 964-9501

**Counsel for Coppell Parties**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e), because it has been prepared in Times New Roman font in 14-point for text and 13-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), because it contains 6,619 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

TAB

A



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

October 3, 2016

Mr. David Mattax
Commissioner of Insurance
Texas Department of Insurance
Post Office Box 149104
Austin, Texas 78714-9104

Opinion No. KP-0115

Re: Under what circumstances Texas courts
afford deference to agency interpretations of
statutes (RQ-0110-KP)

Dear Commissioner Mattax:

You ask "under what circumstances Texas courts afford deference to agency interpretations of statutes, such that notice-and-comment rulemaking would be entitled to greater weight than an agency bulletin."[1] As background, you explain that the Department of Insurance ("Department") "uses bulletins to efficiently give public notice of a variety of topics." Request Letter at 1. You provide as an example Commissioner Bulletin #B-0012-16, which "notified the public of the requirements of House Bill 574 from the 84th Legislature."[2] *Id.* You observe that such notices "arguably could also go through notice-and-comment rulemaking under the Texas Administrative Procedure Act," and you question under what circumstances such rulemaking would be given greater deference by the courts than an agency bulletin. *Id.* Because Texas agency deference is commonly understood from its roots in federal jurisprudence, we must first briefly overview federal agency deference before turning to its Texas counterpart.

## I. Federal Agency Deference

Common understandings of agency deference tend to derive from federal caselaw. The foundation of the federal agency deference, known as *Chevron* deference, is that a federal court must "give effect to the unambiguously expressed intent of Congress"[3] but that when a statute contains an ambiguity or is silent on an issue, the court must defer to an agency's interpretation as

---

[1]Letter from Mr. David Mattax, Comm'r of Ins., Tex. Dep't of Ins., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (June 10, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]Although you refer to Commissioner Bulletin #B-0012-16 as an example of the Department's use of agency bulletins, you do not ask any questions directly related to the content of that bulletin, and this opinion should not be construed to address the specific pronouncements in the bulletin.

[3]*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

long as that interpretation is "reasonable."[4] These are commonly known as *Chevron* Step 1 (whether the statute is ambiguous) and *Chevron* Step 2 (whether the agency interpretation is reasonable). Over time, the U.S. Supreme Court has added elements to its test for when to apply agency deference, which can now be summarized as follows:

| | |
|---|---|
| Step 0a: | Is the question one of deep economic and political significance, such that Congress would not have deferred the matter to an agency?[5] |
| Step 0b: | Has the agency used formal procedures?[6] If so, federal courts skip to Step 1. If not, federal courts weigh other factors in deciding whether to nonetheless apply *Chevron* deference.[7] And if *Chevron* deference is not warranted, federal courts may nonetheless use *Skidmore* deference.[8] |
| Step 0c: | If interpretation is informal, use balancing test to determine whether to treat interpretation as formal.[9] |
| Step 1: | Courts give effect to unambiguous Congressional intent.[10] |
| Step 2: | If the statute is silent or ambiguous, courts defer to the agency's reasonable interpretation.[11] |

One example of the expansiveness of federal *Chevron* deference is *City of Arlington v. FCC*, where the Court held that judges should defer not just to agency interpretations of their own

---

[4]*Id.* at 865.

[5]*King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). Instead of deferring to the relevant agency, the Court waded through the test and context of the Affordable Care Act on its own. *Id.* at 2492–95. Notably, the Court arrived at the same conclusion the federal agency argued, but not because the agency was entitled to deference. *Id.* at 2495–96.

[6]*See United States v. Mead Corp.*, 533 U.S. 218, 230 (2001) ("Thus, the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication.").

[7]*Id.* at 230–31 ("That said, and as significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded.").

[8]*Id.* at 228 ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

[9]Informal interpretations are given much less deference, known as *Skidmore* deference. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[10]*Chevron*, 467 U.S. at 842–43.

[11]*Id.* at 843.

statutes but also to agency interpretations of what statutes are theirs.[12] Despite this expansive doctrine, there are signs the Court is trending toward reigning in *Chevron* deference.[13] Overall, the touchstone of the federal inquiry is whether an agency interpretation is reasonable.

## II. Texas Agency Deference

The Texas Supreme Court has established elements that vary to a degree from federal *Chevron* deference. The Texas Supreme Court entertained a number of different deference arguments over the course of a half century before issuing a ruling in *Railroad Commission of Texas v. Texas Citizens for a Safe Future & Clean Water* that consolidated Texas agency deference law.[14] *Texas Citizens* clarified that Texas courts engage in an analysis "similar" to the federal *Chevron* analysis, which can be broken down into four steps, and two sub-steps:[15]

| | |
|---|---|
| Step 0a: | Is the agency interpretation formal and entitled to deference or informal and not entitled to deference? |
| Step 0b: | How long-standing is the agency interpretation? The more duration, the more deference. |
| Step 1: | Does the agency have authority to enforce the statute (*i.e.*, is the statute within the agency's area of expertise)? |
| Step 2: | Does the agency interpretation conflict with the plain language of statute? |
| Step 3: | Is the agency interpretation reasonable? |
| Step 4: | Courts will generally uphold agency interpretation. |

Each step warrants a closer look.

---

[12]133 S. Ct. 1863, 1867–70 (2013).

[13]*See, e.g., Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016). There, a unanimous Court rejected an argument that received agency deference at the court of appeals:

> We reject the interpretation . . . adopted by the Ninth Circuit. The court's reading of the phrase . . . may be plausible in the abstract, but it is ultimately inconsistent with both the text and context of the statute as a whole. Statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*Id.* (quoting *Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 (2012)).

[14]*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011).

[15]*Id.* at 625.

### A. Formal v. Informal

At the outset, we address the deference Texas courts give to a formal rule in comparison with a publication like an agency bulletin.[16] The Texas Supreme Court has explained that to the extent courts defer to an agency's interpretation of a statute, such deference "applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions" included in a court filing. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006). The Court has indicated that formal rules adopted by an agency after notice and an opportunity for public comment fulfill this qualifier. *See Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 855 (Tex. 2012) (deferring to a formally-promulgated Department rule). Likewise, courts will uphold final orders "formally adopted after an adjudication" if the issuing agency's interpretation satisfies the other requirements for deference. *Tex. Citizens*, 336 S.W.3d at 625. No Texas state court has addressed the extent to which it would defer to an agency bulletin like those promulgated by the Department. However, as we understand it, the Department's issuance of agency bulletins lacks the formal adoption process that exists for promulgating rules. Unlike federal agency deference, there is no recent Texas Supreme Court case granting agency deference to an informal interpretation.[17] Thus, a Texas state court would give significantly less deference to an agency bulletin than to a formal rule on the same issue, and given the Texas Supreme Court's comments in *Fiess* and *Texas Citizens*, it is possible that a Texas court may not give any deference to an informal agency bulletin.

### B. Duration

Additionally, a longer-duration interpretation can help an agency interpretation receive deference. In *Texas Citizens*, the Court noted, "we agree with the Commission that an agency's long-standing construction of a statute, especially in light of subsequent legislative amendments, is particularly worthy of our deference."[18] This notion is similar to the Court's doctrine that it will defer to an appellate court's construction of a statute that the Legislature has not overturned.[19]

---

[16]Your request concerns "Texas courts," so we will address Texas state courts. While Texas state courts engage in an analysis similar to federal courts when considering to what extent to defer to an agency's construction of a statute, Texas state courts "have never expressly adopted the [federal] *Chevron* or *Skidmore* doctrines" for doing so. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). Distinctions between the state and federal doctrines exist, and we limit this opinion to a discussion of when Texas state courts afford deference to an agency's construction of a statute.

[17]*See Mead Corp.*, 533 U.S. at 230–32 (discussing possibility of granting federal agency deference to informal interpretations). Typically, however, federal courts are more likely to grant lesser *Skidmore* deference to such interpretations. *Id.* at 228.

[18]*Texas Citizens*, 336 S.W.3d at 632.

[19]*See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) ("It is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."). It is worth noting, however, the Court has held that "neither legislative ratification nor judicial deference to an administrative interpretation can work a contradiction of plain statutory language." *Pretzer v. Motor Vehicle Bd.*, 138

Thus, while a long-standing interpretation does not appear to be absolutely required, it is certainly an important factor for determining how much deference an agency interpretation will receive.

### C. *Area of Expertise*

In *Texas Citizens*, the Court observed that it "should afford no deference to an agency's interpretation of a statute that does not lie within its administrative expertise or pertain to a nontechnical issue of law."[20] There, the question was whether the Railroad Commission was entitled to agency deference under a statute that required it to consider "the public interest" when issuing a certain permit. The Court held that

> the Commission interpreted the public interest finding in such a way as to ensure that it will only consider matters within its expertise. . . . [T]he Commission's determination that "public interest" does not include traffic-safety matters is reasonable under the Act's statutory scheme. We further conclude it is reasonable given the Commission's unique competence as the state's agency overseeing oil and gas production.[21]

As such, the Court recognized that an agency's expertise is a mandatory prerequisite for deferring to its interpretation of a statute.

### D. *Ambiguity*

"[D]eferring to an agency's construction is appropriate only when the statutory language is ambiguous." *Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 799 (Tex. 2016) (explaining that "statutory ambiguity is the quickest path to administrative deference"). Though the heart of the federal deference inquiry is reasonableness, the heart of the Texas inquiry is ambiguity. Two years after the Court consolidated its agency deference jurisprudence, it made it abundantly clear that this core element is where agencies attempting to obtain deference will fail:

> It is true that courts grant deference to an agency's reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; "an agency's opinion cannot change plain language." There is no ambiguity about the ambiguity requirement, nor with the unassailable rule that agency interpretations cannot contradict statutory text. Here, the Comptroller's interpretation is contrary to the Tax Code.[22]

---

S.W.3d 908, 915 (Tex. 2004). In other words, the Legislature cannot be deemed to acquiesce to an incorrect judicial decision or administrative interpretation.

[20]*Texas Citizens*, 336 S.W.3d at 630.

[21]*Id.*

[22]*Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (quoting *Fiess*, 202 S.W.3d at 747).

Or as the Court framed it elsewhere: "[a]gency deference has no place when statutes are unambiguous—the law means what it says—meaning [courts] will not credit a contrary agency interpretation that departs from the clear meaning of the statutory language." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013).

Importantly, Texas courts seldom conclude that a statute is ambiguous. This is largely due to the fact that the Texas Supreme Court has a well-developed, tiered process for assessing the meaning of statutes as a matter of law:[23] text, context, and canons of construction.[24] In construing statutes, Texas courts will first look to the plain language of the statute itself, recognizing that the text of the statute is the best indication of the Legislature's intent. *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). If a statute's meaning is clear, courts will apply its words according to their common meaning without the use of rules of construction or extrinsic aids. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008). After all, "an agency's opinion cannot change plain language." *Fiess*, 202 S.W.3d at 747.

In addition to examining the text, courts are also to examine the context of the statute. The Texas Supreme Court has recently elaborated:

> When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive.[25]

To assess context, the Court "look[s] to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure."[26]

Finally, if the court is unable to discern the meaning of a statute from the text and context of the statute, it will then "resort to canons of construction or other aids such as which statute is more specific." *Hallmark Mktg. Co.*, 488 S.W.3d at 800. Through the Code Construction Act, the Legislature has provided a number of statutory canons to assist in determining the meaning of a

---

[23]*Sw. Royalties, Inc. v. Hegar*, 2016 WL 3382151, at *4 (Tex. 2016) ("Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation.").

[24]Other members of the judiciary are focusing their judicial frameworks for construing statutes along the lines of the Texas model. *See* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2144 (2016). Judge Kavanaugh asserts that the "best reading" of a statute's plain language "depends on (1) the words themselves, (2) the context of the whole statute, and (3) any other applicable semantic canons." *Id.* at 2144–45.

[25]*In re Office of the Attorney Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015).

[26]*Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

potentially ambiguous statute. *See* Tex. Gov't Code §§ 311.001–.035; *see also id.* § 311.003 ("The rules provided in this chapter are not exclusive . . . ."). In addition to these legislative canons, Texas courts have developed and utilized numerous additional canons to aid in the construction of statutes. *See, e.g., TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 441 (Tex. 2011) (explaining the canon of *noscitur a sociis,* or "it is known by its associates"); *Univ. of Tex. at Arlington v. Williams,* 459 S.W.3d 48, 52 (Tex. 2015) (explaining the canon of *ejusdem generis,* or the notion that "general terms and phrases should be limited to matters similar in type to those specifically enumerated"); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 53–336 (2012) (identifying fifty-seven canons of statutory construction used by courts to interpret statutes).

Rather than find a statute ambiguous and then defer to an agency construing it, Texas courts will often rely on these canons of statutory construction to determine for themselves the unambiguous meaning of a statute. *See, e.g., Sw. Royalties, Inc.,* 2016 WL 3382151, at \*\*4–5 (Tex. 2016) (using multiple canons of construction to determine that statutory language "is not ambiguous"). For example, the Texas Supreme Court has explained that "if an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, [courts] will apply the definition most consistent with the context of the statutory scheme." *Id.* at \*4. It should come as no surprise that the Texas Supreme Court has only found statutes to be ambiguous in a handful of occasions since it clarified the requirements for agency deference in *Texas Citizens. See, e.g., Tex. Citizens,* 336 S.W.3d at 628;[27] *Am. Nat'l Ins. Co.,* 410 S.W.3d at 853–54.[28]

### E.  Reasonableness

In the rare case a Texas court finds a statute to be ambiguous, a Texas court then analyzes whether the agency's interpretation of the statute is reasonable. *Tex. Citizens,* 336 S.W.3d at 628. The agency's construction need not be "the only—or the best—interpretation in order to warrant [a court's] deference." *Id.* In other words, ambiguity and reasonableness are distinct but related requirements. Only if a statute is ambiguous may the court consider whether the agency interpretation is reasonable. But ambiguity also encompasses reasonableness. As the Texas Supreme Court has made clear after *Texas Citizens,* an ambiguous statute has more than one *reasonable* interpretation. *Id.*

### F.  Serious Consideration

If the statute an agency is charged with administering has more than one reasonable interpretation, and the agency's formal, long-standing interpretation is reasonable, the deference

---

[27]The statute at issue in *Texas Citizens* allowed the Railroad Commission to approve a permit if it was "in the public interest," a phrase the Court acknowledged to be "amorphous." *Texas Citizens,* 336 S.W.3d at 626, 630.

[28]In *Texas Department of Insurance v. American National Insurance Co.,* a statute used but did not define the terms "stop-loss insurance" and "reinsurance." 410 S.W.3d 843, 854 (Tex. 2012). The various insurance statutes offered inconsistent interpretations of what those terms meant. *Id.* The Court deferred to the agency's reasonable interpretation that it promulgated through notice-and-comment rulemaking. *Id.* at 855.

is still not absolute. The Texas Supreme Court has framed the issue in two ways that at least provide a theoretical mechanism for a court to not defer: a court will "generally uphold" or give "serious consideration" to the agency interpretation.[29] Our research failed to yield a case where the agency ran the other elements of the gauntlet and still failed to receive deference. But the framing nonetheless indicates the Texas Supreme Court's resistance to deference. By comparison, this element of federal agency deference provides that federal courts will defer to the agency if the other elements of deference are met.[30]

### G. Constitutional Underpinnings of the Narrow, Texas Agency Deference

One might rightfully question why the Texas Supreme Court so rarely defers to agencies. Practically speaking, the Court has made clear that this is because of its view of statutes (or contracts) so rarely being ambiguous.[31] But there is also a more fundamental concern than notions of ambiguity undergirding a narrow view of agency deference: the constitution. We know from the structure of the federal and state constitutions that Congress and the Legislature write laws, the executive branches are to enforce them as written, and the judiciary interprets the laws.[32] The U.S. Supreme Court expounded on the role of the judiciary in the all-too-familiar case of *Marbury v. Madison*: "It is emphatically the province and duty of the judicial department to say what the law is. . . . If two laws conflict with each other, the courts must decide on the operation of each."[33] Constitutionally speaking, Texas courts will not lightly yield their constitutional role to interpret the law to the executive branch.[34] Agency deference results in one branch of government wielding

---

[29]*Health Care Servs. Corp.*, 401 S.W.3d at 629 (quoting *Texas Citizens*, 336 S.W.3d at 624–25).

[30]*See Chevron*, 467 U.S. at 844 ("Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

[31]*Health Care Servs. Corp.*, 401 S.W.3d at 630 ("[A] precondition to agency deference is ambiguity; 'an agency's opinion cannot change plain language.' There is no ambiguity about the ambiguity requirement, nor with the unassailable rule that agency interpretations cannot contradict statutory text." (quoting *Fiess*, 202 S.W.3d at 747) (footnote omitted)).

[32]U.S. CONST. arts. I–III; TEX. CONST. arts. II–V.

[33]5 U.S. 137, 177 (1803).

[34]This also helps explain why the Court does not give credence to such things as the statements of individual legislators. *See, e.g., Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute. . . .Construing clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law—ensures that ordinary citizens are able to rely on the language of a statute to mean what it says. . . . It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used . . . ."); *Klein v. Hernandez*, 315 S.W.3d 1, 11 (Tex. 2010) (Willett, J., concurring) ("The statute itself is what constitutes the law; it alone represents the Legislature's singular will, and it is perilous to equate an isolated remark or opinion with an authoritative, watertight index of the collective wishes of 181 individual legislators, who may have 181 different motives and reasons for voting the way they do." (quotation marks omitted)). And it also helps explain why the Court disregards legislators' attempts after the passage of a law to claim it means something other than what was written.

the power of two, or (if a legislative delegation is involved) all three. Now, the drum beat of a chorus of commentators and even federal appellate judges are calling into question whether *Chevron* is constitutional.[35] As James Madison framed the issue in Federalist No. 47, "[n]o political truth is . . . stamped with the authority of more enlightened patrons of liberty" than the separation of powers. The Federalist No. 47 (James Madison).

---

*See, e.g., Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 444 (Tex. 2009) ("It has been our consistent view that '[e]xplanations produced, after the fact, by individual legislators are not statutory history, and can provide little guidance as to what the legislature collectively intended.'" (quoting *In re Doe*, 19 S.W.3d 346, 352 (Tex. 2000)).

[35]*See Gutierrez-Brizuela v. Lynch*, No. 14-9585, 2016 WL 4436309, at *7 (10th Cir. Aug. 23, 2016) (Gorsuch, J., concurring) ("Transferring the job of saying what the law is from the judiciary to the executive unsurprisingly invites the very sort of due process (fair notice) and equal protection concerns the framers knew would arise if the political branches intruded on judicial functions.").

## <u>S U M M A R Y</u>

Texas state courts consider deferring to an agency's interpretation of a statute only when the agency adopts the construction as a formal rule or opinion after formal proceedings. Even when the agency has formally adopted a construction, a state court will defer to that construction only upon finding that ambiguity exists in the statute at issue and that the agency's construction is reasonable and consistent with the statute's plain language.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 108514470
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Coppell Parties' Response Brief as Cross-Appellees
Status as of 11/26/2025 4:42 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 11/26/2025 4:20:08 PM | SENT |
| Bryan Dotson | 24072769 | bryan.dotson@chamberlainlaw.com | 11/26/2025 4:20:08 PM | SENT |
| Ray Langenberg | 11911200 | ray.langenberg@cpa.texas.gov | 11/26/2025 4:20:08 PM | SENT |
| Reed Randel | 24075780 | Reed.Randel@hklaw.com | 11/26/2025 4:20:08 PM | SENT |
| Stephen Fink | 7013500 | Stephen.Fink@hklaw.com | 11/26/2025 4:20:08 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 11/26/2025 4:20:08 PM | SENT |
| Kyle Counce | 24082862 | Kyle.Counce@oag.texas.gov | 11/26/2025 4:20:08 PM | SENT |
| Cynthia Bourland | 790343 | bourland@bourlandlaw.com | 11/26/2025 4:20:08 PM | SENT |
| Brandon L.King | | brandon.king@hklaw.com | 11/26/2025 4:20:08 PM | SENT |